## COLEMAN v. BROAD RIVER TOWNSHIP.

1. RAILROAD AID BONDS—TOWNSHIP BONDS.—The coupons in controversy here, detached from railroad aid bonds issued by defendant township under act of 1885 (19 Stat., 362), are governed by the act of 1888 (20 Stat., 12), and recovery thereon is not prevented because the act of 1885 is in that respect unconstitutional.
2. VALIDATING ACT—TAXING POWER.—The act of 1888 (20 Stat., 12,) is not a validating act, but is a constitutional exercise of the general taxing power by the General Assembly.
3. RAILROAD AID BONDS—TOWNSHIP BONDS—INTEREST.—The debt placed on townships by the act of 1888 (20 Stat., 12), having voted on themselves railroad aid bonds, does not commence to bear interest until such railroad is completed through the township, and has been received by the railroad commissioners.
4. IBID.—The act of 1885 (19 Stat., 362,) is unconstitutional, in so far as it attempts to authorize townships to issue bonds in aid of the N. & L. Railroad.
5. IBID.—VALIDATING ACT.—The act of 1886 (19 Stat., 605,) does not validate unconstitutional parts of the act of 1885 (19 Stat., 362).

Before ALDRICH, J., Lexington, February, 1897.  Reversed.

Action by Robert L. Coleman against Broad River Township, in the county of Lexington, on the following complaint:

1. That the defendant is a corporation duly chartered under and by virtue of an act of the General Assembly of the State of South Carolina, entitled an "Act to incorporate the Newberry and Laurens Railroad Company," approved December 26, A. D. 1885, and by an act amendatory thereof, entitled "An act to amend an act entitled an 'Act to incorporate the Newberry and Laurens Railroad Company,' and to validate all acts and contracts done and made in pursuance of the same," approved December 24th, A. D. 1896, and that said corporation is entitled by its charter and the laws of said State to make the contract hereinafter mentioned.

2. That said acts of the General Assembly authorized and empowered all the counties, and the townships in said counties, along the line of the Columbia, Newberry and Laurens Railroad, which were interested in the construction thereof, to subscribe to the capital stock thereof and to issue bonds in aid thereof, and declared the board of county commissioners of the several counties to be the corporate agents of the townships within the limits of said counties respectively, and authorized and empowered said boards respectively to execute and issue bonds of said townships in aid of said railroad, as will more fully appear by reference to said acts, which are by their terms declared to be public acts.

3. That Broad River Township is in Lexington County, in the State aforesaid, and lies along the line of said railroad, which has been completed through said township and is now operated, and that in pursuance of said acts an election was duly held in said township, and resulted in favor of the subscription to the capital stock of said railroad company to the amount of $15,100.

4. That in pursuance of said acts, the board of county commissioners for Lexington County, on the 12th day of November, 1886, duly issued and executed bonds of said township, with attached interest coupons at the rate of six per centum per annum, said bonds aggregating $15,100, as authorized by said acts, and in the denominations therein provided, said bonds were numbered on their face, and they,

and the coupons attached, were made payable at the National Bank of Newberry, S. C., said coupons being made payable on the 1st day of July in each year upon the delivery of the same; and after the obligatory part thereof, said bonds recite and conclude as follows: "This bond is one of a series, not exceeding $15,100, which was authorized to be subscribed by said township to the capital stock of the Columbia, Newberry and Laurens Railroad Company, a corporation chartered by the State of South Carolina by an act of the General Assembly of said State, approved the 26th day of December, 1885, and this bond is issued by the county commissioners of said county for and in behalf of said township upon the petition of the majority of the freehold voters owning real estate in said township, and upon the vote of subscription by the voters of said township, as provided in said act of the General Assembly.

In witness whereof, and by the authority of said act, the county commissioners of Lexington County have officially executed this bond, and caused the same to be countersigned by their clerk, and have caused the seal of said county to be affixed, and have also caused the coupons hereto annexed to be countersigned by their clerk, this the 12th day of November, in the year of our Lord 1886. (Signed) S. M. Sightler, chairman, J. J. Derrick, W. S. Keisler, board of county commissioners. Countersigned and attested by Tyler W. Kaufmann, [Seal] clerk of the board of county commissioners."

5. That the plaintiff, relying upon the recitals aforesaid contained in said bonds, and upon their being legal and valid obligations of said township, became the purchaser of a large number of bonds so issued, and paid full value for them without notice of defect or irregularity therein, and is now the legal owner and holder thereof; and that at the time of the issuance of said bonds and of the purchase thereof by the plaintiff, said bonds and coupons, and other bonds and coupons issued as obligations of other townships, under said acts and similar acts enacted by the General Assembly

of the State of South Carolina prior to and when the bonds were also issued, were regarded and trusted as valid securities by the corporate authorities of said townships, by the public, the legal profession, and by the legislative, executive, and judicial departments of the State of South Carolina; and that they circulated freely in the market, and large sums of money were invested in them by the citizens of South Carolina as well as other States, believing them to be valid and valuable securities.

6. That the plaintiff is now the owner and holder of 132 coupons recently detached from said bonds, made and issued by said defendant and purchased by the plaintiff; to show the manner and form of authentication of which, all being alike in these respects, a copy of one is here inserted, to wit: "Broad River Township, 3 in the county of Lexington, $60 State of South Carolina, will pay the bearer, at the National Bank of Newberry, on the first day of July, 1890, sixty dollars, being the annual 64 interest due on bond No. 64, issued in payment of the subscription of the said township to the capital stock of the Columbia, Newberry and Laurens Railroad.   Tyler W. Kaufmann, clerk board of county commissioners."

7. That the other coupons so owned and held by plaintiff, together with the one of which a copy has been made a part of this complaint, are as follows, to wit: Fifty-one coupons No. 3, each for the sum of $6, being the annual interest due on the first day of July, 1889, on bonds numbered from 1 to 51, inclusive, issued as aforesaid.   Also, fifty-one coupons No. 4, for $6 each, being the annual interest due on the first day of July, 1890, on bonds numbered from 1 to 51, inclusive.   Also, ten coupons No. 3, each for the sum of $30, being the annual interest due on the first day of July, 1889, on bonds numbered from 52 to 61, inclusive.   Also, ten coupons No. 4, for $30 each, being the annual interest due on the first day of July, 1890, on bonds numbered from 52 to 61, inclusive.   Also, five coupons No. 3, for the sum of $60 each, being the annual interest due on the first day of

July, 1889, on bonds numbered from 62 to 66, inclusive.
And five other coupons No. 4, for $60 each, being the an-
nual interest due on the first day of July, 1890, on bonds
numbered from 62 to 66, inclusive.

8. That no part of said coupons has been paid, although
long since past due, and the defendant has failed and refused,
and still fails and refuses, to assess and collect taxes for the
payment of said coupons and interest thereon, and it refused
and failed, and still refuses, to place money in the office of
the treasurer of Lexington County or at the National Bank
of Newberry, S, C., for the payment of said coupons and
the interest thereon; that the said coupons and the interest
thereon, long since due, remain wholly unpaid, and defend-
ant has refused, upon demand, to pay the same, and there is
now due upon said coupons the sum of $1,812, with interest
on $906 thereof from the first day of July, 1889, and inter-
est on the remaining $906 thereof from the first day of July,
1890.    And the said coupons are tendered for cancellation
when judgement shall be rendered.

Wherefore, the plaintiff demands judgment against the
defendant for the sum of $1,812, the aggregate amount of
said coupons, and also the interest on the same from the days
when they were severally due, and for the costs of this action.

The defendant answered as follows:

1. That it denies each and every allegation in paragraph
1 of the said complaint.

2. That it admits that the legislature passed the acts re-
ferred to in paragraph 2 of the complaint, with the provisions
therein alleged, but it alleges that the said acts are null and
void, and contrary to the provisions of the Constitution of
1868, art. 2, sec. 20, and art. 9, sec. 8, so far as the said acts
undertook to incorporate the said township, and to author-
ize them or any one for them to subscribe any bond or
bonds in aid of the construction of the said railroad.

3. That it admits that Broad River Township is in Lex-
ington County, in the State aforesaid, and lies along the line

of the said railroad, as alleged in paragraph 3 of the complaint, and it alleges that the said railroad was not completed through said township and received by the railroad commissioners of this State until the 30th day of June, A. D. 1890, and it further denies the remaining allegations in this paragraph.

4. That it admits that the board of county commissioners for Lexington County, about the time mentioned in paragraph 4, attempted to issue for Broad River Township some such bonds as the ones indicated in said paragraph, but it alleges that it has no information or belief as to the exact contents and recitals thereof, and, therefore, denies that the copy set out in this paragraph is a correct copy of said bonds. Further answering this paragraph, the defendant alleges that the said board of county commissioners had no legal right to issue such bonds as agents thereof, and that all such bonds so issued are null and void, and contrary to the then Constitution of the State.

5. That it denies each and every allegation in paragraph 5 of said complaint, and alleges in regard thereto that at no time since the issuance of said bonds has the public received them as good and valid securities, but that they have always been of doubtful character, and that in February following the issuance thereof an action was brought in one of the counties of this State—*Floyd* v. *Perrin*—to test the validity of this class of bonds; that said action was terminated adversely to the validity of the bonds both in the Circuit and Supreme Courts of this State, and of this action and its result the public and this plaintiff had notice; and that the plaintiff is not a *bona fide* holder of said bonds without notice for value, because said bonds at that time could not be and were not sold on the market, and if they are now the property of the plaintiff, he came into possession of them since the commencement of the said action. The defendant alleges, upon information, that the said railroad (Columbia, Newberry and Laurens) was built and completed through Broad River Township by the Congaree Construction Com-

pany, of which company this plaintiff was a stockholder and director; that the said railroad was so completed and built by funds raised by a mortgage executed on said railroad; that no part of said bonds issued as aforesaid was ever used in the construction or equipment of said road, but that these bonds so attempted to be issued against this defendant were given to the plaintiff as his share of the profits made by the said construction company in the building of the said road. That the majority of the directors of the said construction company were directors of the Columbia, Newberry and Laurens Railroad Company, and as such former directors were the trustees of the said railroad company, and any profits made by them individually by virtue of such trusteeship belong to the railroad company, and are not the property of the plaintiff for value.

6. That it denies the allegations in paragraph 6 of the complaint.

7. That it denies the allegations in paragraph 7 of the complaint.

8. That it admits, as alleged in paragraph 8, that no part of the claim of plaintiff has been paid, that defendant has not levied or collected any taxes to pay the same or any part thereof, and that it has not placed any money in the county treasury or the Bank of Newberry to pay the same; but it denies that any demand had been made on the defendant for the payment of the same, or to levy any tax therefor; and it further denies that it is due the plaintiff anything upon the alleged cause of action.

9. For a further defense, this defendant alleges that the cause of action set out in the said complaint did not accrue within six years prior to the commencement of this action.

Wherefore, defendant demands judgment, that the said complaint be dismissed with costs.

After close of plaintiff's testimony, the defendant made a motion for nonsuit upon the ground that the act of 1885, under which these bonds were issued, was contrary to and

in violation of art. IX., sec. 8, of the Constitution of 1868, so far as said act undertook to incorporate the said township or to authorize it or any one for it to subscribe any bond or bonds in aid of the construction of said railroad, and that the county commissioners had no authority to issue these bonds, &c. Upon the further ground, the statute of limitations applies to these obligations—they are barred by the statute of limitations.

After argument *pro* and *con.*, the Judge said:

Well, gentlemen, I have listened to the arguments upon both sides, upon this motion for a nonsuit, with a great deal of pleasure, and, I might add, with much profit, because the arguments have been characterized by learning and research seldom surpassed in courts. The issues that you bring up here, in themselves, would be very difficult to decide, if the duty were cast upon me in the first instance to decide those issues; but, fortunately for me and for the litigants, many of those issues have been decided by the Court of last resort of this State; and in passing, comment has been made upon the decision of the Supreme Court of the United States— *Fulsom* v. *Ninety-Six Township*—and the difference in judgment reached by that Court and that of the Supreme Court of this State. I do not see, according to my understanding of the motion as made here, that I am called upon to say whether or not I am compelled to follow the decision of the Supreme Court of the United States in preference to the Supreme Court of this State; though, in passing, I would say (and I think it would be proper) that a Circuit Judge is bound by the decision of his own State Supreme Court on all matters within the jurisdiction of that Supreme Court, and not bound to follow the decision of the United States Court, unless the decision of the United States Court is based upon some constitutional provision of the law over which the United States had either exclusive or concurrent jurisdiction. Now, the act of 1885, which, as I understand, incorporated the Newberry and Laurens Railroad Company, and under which bonds and coupons were issued, is, as to

townships, their right to vote upon and issue bonds in aid of railroad, substantially in the same terms as was the act to incorporate and provide for townships to issue bonds in aid of the railroads passing through Ninety-Six Township, in Abbeville County, and which was construed by the Supreme Court of this State in the case of *Floyd* v. *Perrin.* I have examined the two acts, and I think the act of 1885, and the act in regard to railroads passing through Ninety-Six Township, are substantially the same, and that the decision of the Supreme Court as applicable to the case presented to-day, stands under the act of 1885 incorporating the Newberry and Laurens Railroad Company.

The next step would be the consideration of the act of 1886, entitled "An act to amend an act to incorporate the Newberry and Laurens Railroad Company, and to validate all acts and contracts done and made in pursuance of the same." It is said that that act differentiates this case from the facts upon which the judgment in the case of *Floyd* v. *Perrin* was predicated. Well, now, I can not sustain that position, and for two reasons. First, the act of 1886, in its title and by its provision, was intended to change the name of the Newberry and Laurens Railroad Company to its present name, and to declare legal and valid and of binding force and effect contracts made by the old company, and that these contracts should subsist in favor of the new company as now organized and against the person who contracted with the old company; in other words, would be legal successor to the rights, privileges, and properties of the old company; for that reason I do not think that the act of 1886 is analogous or similar to the act of 1888. And I reach the same conclusion, basing it upon this ground: the act of 1885, if it was originally unconstitutional, as it certainly was under the decision of *Floyd* v. *Perrin*, was the act under which the elections were held and the bonds issued in favor of the Newberry and Laurens Railroad Company? Therefore, the act of 1886, coming after the election and issuing of bonds, purported to do what? To validate and declare legal and

valid all contracts, &c., made by the company. That act could only legalize and validate the contracts or obligations that were legal; and no contract could be legal that was not constitutional, no act of the old company could be legal or valid which in its incipiency and at its completion was clearly unconstitutional and void; therefore, this act to declare, if that had been its purpose, that such bonds issued in pursuance of it was legal and valid, would be beyond the scope of the legislature itself. But, as I say, I don't think that the legislature contemplated in the provisions of the act of 1886 doing any such thing, because I don't think that any such purpose can be found in the terms of the act; but if the act were construed in that light, I do not see how that would validate those bonds. We go a step further, to the act of 1888. That act, as expressed in the preamble and as decided by the Supreme Court, was intended to bring to an adjustment all transactions entered into between the people of certain townships on the one hand and certain railway companies on the other, which transactions, began and carried out in good faith *bona fide* on both sides, were discovered to be illegal and unconstitutional and void, because of a mistake in the law under which it was conducted. Now, the act of 1888 recites in the preamble that certain townships had issued bonds in aid of railroads, and that they had been declared illegal. When we come to the enacting words, we find that it says that township bonds heretofore issued by county commissioners as corporate agents of any township in this State in aid of any railroad by a vote of the inhabitants of said township, are hereby declared to be debts of said townships respectively having authorized the issue of the same; so that the legislature in the act of 1888 did at the conclusion of that transaction, and did in a valid way, what it attempted to do at the beginning of the transaction, and did in an illegal way. It attempted and authorized these people by vote to issue bonds in aid of a railroad, and it failed because it didn't do a legal act; but the people went on and acted on it, and the legislature took cognizance

of their act, and did reverse the order, so to speak, and carried into effect the contract for which the people of these two townships were desirous, and created the obligation, sanctioned the debt and made it valid—sanctioned the debt in the sense that the act there and then by its own terms, in connection with the acts of the people, constituted there and then the debt of the people voting the bonds. Now, under that view of the case, I think that your coupons rest upon the provisions of the act of 1888, and if so, the question then comes up as to the statute of limitations; and I think that the section of the Code provided that on the coupons here the period is six years. When did your coupons and bonds—I should say coupons only, because they are alone before the Court—become legal and valid existing obligations upon the defendant townships under the act of 1888? That act says that no taxes shall be levied or collected, &c.—which means that no interest or principal shall be paid on such bonds prior to the completion of such railroad, as provided in this section. When was the railroad completed, as provided in this section? Under the facts as testified to by plaintiff, admitted, that it was the 30th day of June, 1890. Evidently, then, coupons for the year 1889 accrued prior to the completion of the road, and the section reads that no taxes shall be levied under the provisions of this act to pay interest on any township bonds until the railroad in aid of which they were subscribed shall be completed through such township and accepted by the railroad commissioners, nor shall this act be so construed as to authorize the levy and collection of taxes to pay the interest that may have accrued on such bonds before the completion of such railroad, as provided in this section. That is a clear prohibition, a mandate that no taxes shall be levied to pay— no matter what the bonds may say—any interest that accrued prior to the completion of the road. What does the word "accrued" mean? The legal definition as has been read is "payable." Perhaps, in construing a statute of this character, it is possible that the legislature used the word as equi-

valent to the word "matured." Be that as it may, I haven't got the discretion to guess what the legislature meant, or what it intended to do. The statute is before me—thus is it written. All coupons for 1890 accruing after the completion of the road, and the suit having been commenced within less than six years from that date, I must hold that they are not barred by the statute of limitations. I am bound by the legislative act, as I construe it. I wish to say further, that in construing this question of statute of limitations, I am not at all satisfied in my mind that it was proper for me to consider it on the motion for nonsuit, as the plea of statute of limitations is a defense; it was only in deference to the wishes of counsel on both sides who urged me to pass upon that act at this time, that I do so. I intimated by my question that I doubted the propriety of discussing that question; then counsel on both sides desired and requested that I pass upon it, and I never like to refuse a request of counsel.

The motion for nonsuit must be refused. I think the money due on coupons for 1889 cannot be maintained, because it is contrary to the act proven as the law existing in 1888, and also barred by the statute of limitations.

After motion for nonsuit was refused as to the coupons due July 1st, 1890, the plaintiff took a formal verdict for the sum of $1,327.50, upon which judgment was duly entered.

From this judgment the defendant appeals.

*Messrs. Efird & Dreher* and *Meetze & Muller*, for appellant, cite: *Coupons void:* 19 Stat., 362, 605; 30 S. C., 1; 20 Stat., 12; 38 S. C., 228; 30 S. C., 579, 586, 587; 14 Stat., 146, 313; 18 Stat., 214; 19 Stat., 239, 241; 30 S. C., 31, 583; 34 S. C., 245; 33 S. C., 410. *Construction of act of 1888:* 30 S. C., 587; 31 Wis., 451; 36 Mo., 128; 3 O. B. Div., 215; 35 Barb., 297; 88 Ala., 509; 20 Stat., 12.

*Mr. W. H. Lyles*, contra, cites: *Coupons not void:* 20 Stat., 12; 31 Wis., 451; 159 Pa. St., 556; 13 Ohio St., 387; 30 S. C., 587; Code, 94.

Sept. 7, 1897. The opinion of the Court was delivered by

MR. JUSTICE GARY.    It does not appear when this action was commenced.    The complaint, however, is dated 20th June, 1896.    The case was tried before his Honor, Judge Aldrich, and a jury, at the February, 1897, term of the Court for Lexington County.    There is no issue as to the facts.

At the close of plaintiff's testimony the defendant made a motion for a nonsuit, "upon the ground that the act of 1885, under which these bonds were issued, was contrary to and in violation of art. 9, sec. 8, of the Constitution of 1868, so far as said act undertook to incorporate the said township, or to authorize it, or any one for it, to subscribe any bond or bonds in aid of the construction of said railroad, and that the county commissioners had no authority to issue these bonds, &c.    Upon the further ground that the statute of limitations applies to these obligations, they are barred by the statute of limitations."    After the motion for nonsuit was refused as to the coupons due July 1, 1890, the plaintiff took a formal verdict for $1,327.50, upon which judgment was duly entered.

In order to understand the questions raised by the exceptions, it will be necessary to set out in the report of the case the complaint, the answer, and the order of his Honor, the presiding Judge, refusing the motion for nonsuit.

The first exception is a follows: 1. "Because his Honor erred in not granting the motion for nonsuit on the coupons purporting to be due July 1st, 1890, upon the ground that the bonds from which they were detached were null and void, because the act of 1885, incorporating the Newberry and Laurens Railroad Company, is contrary to art. 2, sec. 20, and art. 9, sec. 8, of the Constitution of 1868, so far as the said act undertook to incorporate the said township, and authorize it, or any one for it, to subscribe any bond or bonds in aid of the construction of the said railroad."    This case is governed by the act of 1888, hereinafter mentioned, and the unconstitutionality of the act of

1885 is not sufficient to prevent recovery.    This exception is, therefore, overruled.

The second exception is as follows: 2. "Because his Honor erred in overruling the motion for nonsuit as to the coupons purporting to be due July 1st, 1890, holding that said coupons were, by the act of 1888, made debts upon said township, when he should have held, holding as he did that the bonds were null and void, that the coupons detached from said bonds were also null and void."    The principle is well established by several cases in this State, that the act of 1888 is unconstitutional, and that the unconstitutionality of the bonds issued before its passage would not prevent a recovery when there was a compliance with the provisions of said act.    This exception is also overruled.

The third exception is as follows: 3. "Because his Honor erred in holding upon the motion for nonsuit, 'That your coupons rest upon the provisions of the act of 1888,' when he should have held, holding as he did that the bonds were null and void, that the coupons sued on were null and void, and that the act of 1888, 20 Stat., 12, did not validate the same."    The act of 1888 was not a validating act, but was passed by the General Assembly in the exercise of its powers of taxation, and which, as hereinbefore stated, has been declared by this Court to be constitutional.    This exception is overruled.

The fourth exception is as follows: 4. "Because his Honor erred in holding as to the second section of the act of 1888, 'What does the word accrued mean?    The legal definition as has been read is *payable.*    Perhaps, in construing a statute of this character, it is possible that the legislature used the word as equivalent to the word *matured.*'    When he should have held that under the act of 1888, p. 12, 20 Stat., the debt voted by the people of this township in aid of said railroad, would not be an obligation that was due and payable until the railroad was completed through the said township and received by the railroad commissioners of the State, and that the interest thereon should

only commence to run from such time, to wit: June 30th, 1890." This exception involves a construction of the act of 1888. The title, preamble, and sections 1 and 2 thereof are as follows: "An act to provide for the payment of township bonds issued in aid of railroads in this State. Whereas certain townships in this State have by their vote expressed their willingness to subject themselves to taxation, for the purpose of paying bonds issued by them in aid of certain railroads; and whereas, by reason of a defect in the act authorizing the issue of said bonds, they have been declared to be invalid. Now, therefore, for the purpose of carrying info effect the expressed will of the people of said townships: SECTION 1. Be it enacted, &c., that the township bonds heretofore issued by county commissioners, as the corporate agents of any township in this State in aid of any railroad, by vote of the inhabitants of said township, are hereby declared to be debts of said township respectively, having authorized the issue of the same. And the interest and principal thereof shall be paid according to the terms of the said bonds or debts, by the assessment, levying, and collection of an annual tax upon the taxable property of said township, so far as may be necessary, in like manner, and by the same county officials, as the tax levied for county bonds in aid of railroads is assessed, levied, and collected. Said tax to be known and styled in the tax books as the township railroad tax, and when collected shall be paid over, by the treasurer of the county, to the holders of said bonds as the interest on them may become due and according to the terms thereof. All dividends received by or for said township on stock in railroad companies, which have been aided by the said township bonds or debt, shall be applied by the county commissioners of the county in which said townships are situated, primarily towards the payment or retirement of said bonds or debt, and the surplus shall be expended in the improvement of the highways within the territorial limits of said townships. SEC. 2. That no tax shall be levied under the provisions of this act to pay

the interest on any township bond, until the railroad, in aid of which they were subscribed, shall be completed through such township and accepted by the railroad commissioners, nor shall this act be so construed as to authorize the levy and collection of any tax to pay the interest that may have accrued on such bonds before the completion of such railroad, as provided by this section: *Provided*, That in all townships where taxes have heen assessed or collected contrary to the provisions of this act, the county treasurer of the respective counties are required, when such has been paid, to refund the same; and where they have not been paid, to allow a rebate to the extent of such taxes."

In construing an act, effect must, if possible, be given to all its provisions. If the words, "nor shall this act be so construed as to authorize the levy and collection of any tax to pay the interest that may have accrued on such bonds before the completion of such railroad, as provided in this section," had been left out in section 2, it would be plain that, after the completion of the railroad as provided in said section, a tax could be levied and collected to pay the interest that had accrued on the bonds before the completion of the railroad. Then what was the object of the legislature in using those words? It was to expedite the completion of the railroads, as provided in said act, by allowing interest on said bonds *only* from the time when the railroads were completed, as therein provided. It is only by thus construing said act that effect can be given to all its parts. This exception is sustained.

The respondent's attorney gave notice that he would rely upon two additional grounds why the motion for nonsuit should have been refused, the first of which is as follows: 1. "That the act of the General Assembly of the State of South Carolina, entitled 'An act to incorporate the Columbia, Newberry and Laurens Railroad Company, approved December 26th, 1885, was itself a valid act, and that the coupons in question were valid and subsisting obligations of the defendant township under said act." This

question is conclusively disposed of, adversely to the contention of the respondent, by the decision recently filed in the case of the *Congaree Construction Company* v. *Columbia Township*, 49 S. C., 535.

The second of said grounds are as follows: "That the bonds from which said coupons were clipped having been issued by the defendant under the act approved December 26th, A. D. 1885, and before the act of the General Assembly, entitled 'An act to amend an act entitled an act to incorporate the Columbia, Newberry and Laurens Railroad Company, and validate all acts and contracts made in pursuance of the same, approved December 24th, A. D. 1886,' and the bonds to which they were attached were made subsisting and existing debts by said act." This ground can not be sustained, for the reasons stated in the order of his Honor, Judge Aldrich, which are satisfactory to this Court.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed, and the case remanded to that Court for a new trial.

MR. JUSTICE JONES did not sit in this case.